1
2
3
4
5               **UNITED STATES DISTRICT COURT**

6               **EASTERN DISTRICT OF CALIFORNIA**

7

8   **LYLE S. McFARLAND,**                    **CASE NO. 1:15-CV-1530 AWI SMS**

9                **Plaintiff**

10        v.                                 **ORDER ON DEFENDANTS' MOTION
                                             TO DISMISS**
11  **CITY OF CLOVIS, CITY OF CLOVIS
    POLICE DEPARTMENT, JACOB RIOS,**
12  **and DOES 1-20,**                       **(Doc. No. 15)**

13               **Defendants**

14

15

16        This case arises from an encounter between Plaintiff Lyle McFarland ("McFarland") and

17  Defendant Officer Jacob Rios ("Rios") of the City of Clovis Police Department ("Clovis P.D.").

18  In the First Amended Complaint ("FAC"), McFarland brings claims under California law and 42

19  U.S.C. § 1983 for violations of his Fourth Amendment rights by Rios and an unknown Clovis P.D.

20  officer.  The City of Clovis ("the City") and the Clovis P.D. now move under Rule 12(b)(6) to

21  dismiss the Fourth Cause of Action for violation of California Civil Code § 52.1 and the *Monell*

22  claims in the First, Second, and Third Causes of Action.  For the reasons that follow, the motion

23  will be granted in part and denied in part.

24

25               **RULE 12(b)(6) FRAMEWORK**

26        Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

27  plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). A

28  dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

1   absence of sufficient facts alleged under a cognizable legal theory.  Conservation Force v. Salazar,

2   646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121

3   (9th Cir. 2008).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are

4   taken as true and construed in the light most favorable to the non-moving party.  Faulkner v. ADT

5   Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013); Johnson, 534 F.3d at 1121.  However,

6   complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the

7   elements of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Dichter-Mad Family

8   Partners. LLP v. United States, 709 F.3d 749, 761 (9th Cir. 2013). The Court is not required "to

9   accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

10  unreasonable inferences."  Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 n. 4 (9th Cir.

11  2012); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  To avoid a Rule

12  12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a

13  claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678; Faulkner, 706 F.3d at 1019.

14  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw

15  the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S.

16  at 678; Dichter-Mad, 709 F.3d at 761.  "Plausibility" means "more than a sheer possibility," but

17  less than a probability, and facts that are "merely consistent" with liability fall short of

18  "plausibility."  Iqbal, 556 U.S. at 678; Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013).  The Ninth

19  Circuit has distilled the following principles from *Iqbal* and *Twombly*: (1) to be entitled to the

20  presumption of truth, allegations in a complaint or counterclaim may not simply recite the

21  elements of a cause of action, but must contain sufficient allegations of underlying facts to give

22  fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations

23  that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to

24  require the opposing party to be subjected to the expense of discovery and continued litigation.

25  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  In assessing a motion to dismiss, courts may

26  consider documents attached to the complaint, documents incorporated by reference in the

27  complaint, or matters of judicial notice.  Dichter-Mad, 709 F.3d at 762. If a motion to dismiss is

28  granted, "[the] district court should grant leave to amend even if no request to amend the pleading

2

1   was made . . . ." Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012). However, leave to

2   amend need not be granted if amendment would be futile or if the plaintiff has failed to cure

3   deficiencies despite repeated opportunities. See Mueller v. Aulker, 700 F.3d 1180, 1191 (9th Cir.

4   2012); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

5

6                                    **FACTUAL BACKGROUND**

7           From the FAC, just before 3:30 p.m. on January 25, 2015, Rios and another tall Clovis

8   P.D. officer loudly knocked on McFarland's front door.  When McFarland answered the door, the

9   officers asked about McFarland's cell phone and shotgun.  The "tall officer" asked if they could

10  come into McFarland's home, and McFarland asked what this was about.  The officers then told

11  McFarland to step out of his house.  McFarland complied with the officers' request.  When he

12  stepped outside, the tall officer grabbed and twisted McFarland's right arm behind McFarland's

13  back, and Rios grabbed McFarland's left arm.  The officers then handcuffed McFarland.

14  McFarland, who is 59 years old and disabled due to a serious injury to his right arm, told the

15  officers that he is disabled, repeated to the officers six times that the handcuffs were hurting him,

16  and repeatedly requested that the handcuffs be removed.  The officers were unresponsive.

17          McFarland was arrested for violation of California Penal Code § 422 (criminal threat)

18  based on a text message that he sent to his brother at 3:00 a.m. that morning.  The text included a

19  picture of ammunition and the letters "F-U."

20          While being taken to the police station, McFarland repeatedly informed the officers that he

21  was disabled, that the handcuffs were hurting him, and that the handcuffs should be removed.  The

22  officers ignored McFarland's statements.

23          At approximately 7:30 p.m., McFarland was booked into jail.  Pursuant to a search

24  warrant, Clovis P.D. took possession of McFarland's shotgun, shells, and other possessions.

25  Although McFarland had no previous criminal violations, bail was set at $20,000.00.  McFarland

26  spent 4 hours in the Clovis P.D. jail, and another 2 days and 2 nights in the Fresno County jail.

27  McFarland was eventually released from jail on January 27, 2015, at 10:30 p.m., without any

28  charges being filed.

1    **I.**     **DEFENDANTS' MOTION**

2         **A.**     **First, Second, & Third Causes of Action – *Monell* Liability**

3         *Defendants' Argument*

4         The City argues that McFarland's allegations regarding policies or customs are conclusory.

5    There are no allegations that identify an official policy, or explain how the policy is deficient, or

6    how the policy caused harm, or show that the policy amounts to deliberate indifference.  The same

7    is also true with respect to allegations of improper training.  Because the allegations are

8    conclusory, there are no plausible claims alleged.

9         *Plaintiff's Opposition*

10        McFarland argues that the FAC expressly alleges that the officers acted pursuant to their

11   training and Clovis P.D. policy when they violently seized and arrested him, ignored his disability

12   and complaints about the handcuffs, and held him for 56 hours in prison before releasing him

13   without charge.  The FAC alleges that the officers' training did not adequately deal with probable

14   cause in making an arrest, or in seizing, arresting, handcuffing, and detaining disabled individuals.

15   The involvement of two arresting officers provides support that the officers acted pursuant to a

16   Clovis P.D. policy.  These allegations make dismissal improper.

17        *Legal Standard*

18        Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be

19   liable for causing a constitutional deprivation.  Monell v. Department of Soc. Servs., 436 U.S. 658,

20   690 (1978); Castro v. County of L.A., 797 F.3d 654, 670 (9th Cir. 2015).  A municipality,

21   however, "cannot be held liable solely because it employs a tortfeasor – or, in other words, a

22   municipality cannot be held liable under [42 U.S.C. § 1983] under a *respondeat superior* theory."

23   Monell, 436 U.S. at 691; see Castro, 797 F.3d at 670.  Liability only attaches where the

24   municipality itself causes the constitutional violation through "execution of a government's policy

25   or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

26   represent official policy."  Monell, 436 U.S. at 694; Price v. Sery, 513 F.3d 962, 966 (9th Cir. Or.

27   2008).  Municipal liability may be premised on: (1) conduct pursuant to a formal or expressly

28   adopted official policy; (2) a longstanding practice or custom which constitutes the "standard

operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate.  See Thomas v. County of Riverside, 763 F.3d 1167, 1170 (9th Cir. 2014); Price, 513 F.3d at 966.  A failure to train or inadequate training may form the basis for municipal liability under § 1983 where the training or failure to train amounts to deliberate indifference to the rights of the persons with whom the municipality's employees come into contact.  Flores v. County of L.A., 758 F.3d 1154, 1158 (9th Cir. 2014); Long v. County of L.A., 442 F.3d 1178, 1186 (9th Cir. 2006).  Under such a theory, the "issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy."  Long, 442 F.3d at 1186.  A municipality is deliberately indifferent when the need for more or different action is "so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need."  City of Canton v. Harris, 489 U.S. 378, 390 (1989); Mortimer v. Baca, 594 F.3d 714, 723 (9th Cir. 2010).  Allegations of *Monell* liability will be sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur. Young v. City of Visalia, 687 F. Supp. 2d 1141, 1149-50 (E.D. Cal. 2009).

*Discussion*

1.    First Cause of Action – Fourth Amendment – Arrest Without Probable Cause

The FAC in general alleges that the officers acted pursuant to the training provided by the Clovis P.D. and pursuant to Clovis P.D. policy. See FAC ¶¶ 17, 18.  More specifically, in relevant part the FAC alleges:  ". . . the training that the arresting officers . . . received from Defendant Clovis P.D. did not adequately train the arresting officers . . . in the required probable cause necessary for making an arrest." Id. at ¶ 19.

1    The Court does not find that these allegations sufficiently state a plausible *Monell* claim.

2    The Court can glean that McFarland is attempting to allege that there is a training deficiency with

3    respect to probable cause.  However, the FAC does not explain how the training with respect to

4    probable cause was deficient or inadequate.  See Young, 687 F.Supp.2d at 1149.  There are any

5    number of ways that training may be deficient, e.g. use of an improper definition of probable

6    cause or no training whatsoever regarding probable cause to arrest.  Simply alleging that training

7    is "deficient" or "inadequate" is conclusory and does not support a plausible claim.  Additionally,

8    there are no allegations that explain how the deficient training caused McFarland's injury.  See id.

9    Without identifying how training is deficient and how the training caused injury, it cannot be

10   determined whether the City acted with deliberate indifference.  See id. at 1150.

11   To the extent that McFarland is relying on this particular incident to show inadequate

12   training, his reliance is misplaced.  The Supreme Court has recognized that the fact that "a

13   particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the

14   city," and "plainly, adequately trained officers occasionally make mistakes; the fact that they do

15   says little about the training program or the legal basis for holding the city liable."  City of Canton,

16   489 U.S. at 391; Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989).  Therefore,

17   that Rios and the "tall officer" may have arrested McFarland without probable cause alone does

18   not show inadequate training.  See id.

19   Because there is no plausible *Monell* claim alleged with respect to the First Cause of

20   Action, dismissal is appropriate.

21       2.      Second Cause of Action – Fourth Amendment – False Imprisonment

22   The FAC in general alleges that the officers acted pursuant to the training provided by the

23   Clovis P.D. and pursuant to Clovis P.D. policy.  See FAC ¶¶ 17, 18.  More specifically, in relevant

24   part the FAC alleges that:  ". . . [McFarland] was wrongfully detained, pursuant to policy of [the

25   City and Clovis P.D.], when he was immediately detained after being booked, without proper

26   opportunity to post bail."  Id. at ¶ 13.  The FAC also cites two cases and gives parenthetical

27   descriptions for each.  First, *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) is cited and

28   described as holding that a "policy of detaining persons who could not post immediate bail until

1    their initial appearance ran afoul of 48 hour time limit." Id.  Second, *Sivard v. Pulaski Cnty.*, 959

2    F.2d 662 (7th Cir. 1992) is cited and described as holding that "general allegations that plaintiff

3    was wrongfully detained pursuant to county policy and custom held sufficient to defeat summary

4    judgment; court notes that inexplicable nature of plaintiff's detention created inference that some

5    official policy was responsible for detention." Id.  The Court is not clear about what McFarland is

6    attempting to allege.

7        *Alkire* is a case that deals with policies that led to violation of the 48-hour rule of *County of*

8    *Riverside v. McLoughlin*, 500 U.S. 44 (1991).  See Alkire, 330 F.3d at 813-15.  The Fourth

9    Amendment "requires a prompt judicial determination of probable cause following an arrest made

10   without a warrant and ensuing detention."  Powell v. Nevada, 511 U.S. 79, 80 (1994); Anderson

11   v. Calderon, 232 F.3d 1053, 1069 (9th Cir. 2000)[1]; Hallstrom v. Garden City, 991 F.2d 1473, 1478

12   (9th Cir. 1993).  A "prompt judicial determination of probable cause" generally means

13   presentation before a magistrate within 48 hours of the warrantless arrest.  Powell, 511 U.S. at 80

14   (citing McLoughlin, 500 U.S. at 56); Anderson, 232 F.3d at 1069; Hallstrom, 991 F.2d at 1479.

15   Judicial determinations of probable cause to arrest that are made within 48 hours of arrest are

16   presumptively reasonable, i.e. do not violate the Fourth Amendment; judicial determinations of

17   probable cause to arrest that are made more than 48 hours after arrest are presumptively

18   unreasonable, i.e. do violate the Fourth Amendment.  See McLoughlin, 500 U.S. at 56-57;

19   Anderson, 232 U.S. at 1069; Hallstrom, 991 F.2d at 1479.

20       The FAC's allegation that McFarland was released after 56 hours of confinement, and

21   citation to *Alkire*, may indicate that McFarland was not taken to a magistrate for a judicial

22   determination of probable cause within 48 hours.  If that is what McFarland is attempting to

23   allege, then a constitutional violation would be identified.  See Hallstrom, 991 F.2d at 1479, 1482.

24   However, the FAC fails to expressly allege that a judicial determination was not made within 48

25   hours, the FAC simply alleges a release time.  It is possible to be released after a judicial

26   determination of probable cause is made, but without charges being brought.  Without an express

27   factual allegation that McFarland was not taken for a judicial determination of probable cause

28

---

[1] Overruled on other grounds by Osband v. Woodford, 290 F.3d 1036 (9th Cir. 2002).

1   within 48-hours, the FAC does not plausibly state a constitutional violation.  Also, assuming a

2   violation of *McLoughlin*'s 48-hour rule, merely identifying a constitutional violation is not enough

3   for municipal liability.  The FAC indicates conduct pursuant to policy, but there is no policy that is

4   actually identified.  McFarland needs to make factual allegations that identify the specific policy at

5   issue, explain how the policy is deficient, explain how the policy caused him harm, and reflect

6   how the policy amounted to deliberate indifference.  <u>Young</u>, 687 F.Supp.2d at 1149-50.

7        As for *Sivard*, that case involved an individual who was arrested without a warrant and not

8   given a judicial determination of probable cause for 17 days.  <u>See</u> <u>Sivard</u>, 959 F.2d at 666.  The

9   Seventh Circuit found that the 17 day delay, combined with a general allegation that conduct was

10   done in accordance with policy and custom, were sufficient to show the existence of a policy.  <u>See</u>

11   <u>id.</u>  The Court does not find that *Sivard* aids McFarland.  The Court will accept that other facts and

12   circumstances may help support the existence of a policy, such as a 17 day delay before a judicial

13   determination of probable cause is made.  However, assuming that McFarland was never taken

14   before a magistrate, his detention was 56 hours or 2 1/3 days.  That time period is a far cry from

15   17 days.  Missing the presumptively reasonable 48-hour window by 8 *hours* is nowhere near

16   missing the window by 15 *days*.  The Court cannot find that the mere fact of a 56-hour detention

17   supports the existence of a policy.

18        The FAC also indicates that McFarland was not given a "proper opportunity" to post bail,

19   and also suggests that the $20,000 bail may have been excessive.  There are several problems with

20   these allegations.  First, as to both the opportunity to make bail and the amount of bail, the FAC

21   does not make any factual allegations that identify a specific policy, a deficiency in the policy,

22   causation, and deliberate indifference.  <u>See</u> <u>Young</u>, 687 F.Supp.2d at 1149-50.  Second, as to a

23   "proper opportunity" to make bail, it is unknown what this allegation means.  While an individual

24   has the right to be free from excessive bail, <u>see</u> U.S. Const. amend. VIII, the Court is unaware of a

25   constitutional right to have a "proper opportunity" to make bail or what a "proper opportunity"

26   would even look like.  Without more from McFarland, the allegation that he was not given a

27   "proper opportunity" to make bail does not allege a constitutional violation.  Third, as to the

28   amount of bail, there are no allegations that any Defendant was involved in setting bail.  It is the

1  Court's understanding that the Fresno County Superior Court sets the amount of bail pursuant to a

2  standing order.  The Fresno County Superior Court Bail Schedule sets bail for a felony violation of

3  Penal Code § 422 (which was the offense for which McFarland was arrested, see FAC ¶ 24 & Ex.

4  1) at $20,000.00, and that is the amount of bail that was imposed on McFarland.  See Fresno

5  County Superior Court 2016 Criminal Bail Schedule.[2]  In and of itself, following the bail schedule

6  of the Fresno County Superior Court does not appear improper.

7       Finally, McFarland's opposition cites and relies on *Bordanaro v. McLeod*, 871 F.2d 1151

8  (1st Cir. 1989).  McFarland's describes *Bordanaro* as observing that "officers who were jointly

9  involved in constitutional violations . . . provided evidentiary support of the existence of a

10 municipal policy or custom which caused the constitutional violation, which can be inferred from

11 the event itself."  McFarland then points out that this incident involved two police officers, and

12 thus, indicates conduct pursuant to a policy.  The Court is not convinced.

13      The policy or custom at issue in *Bordanaro* was a practice of breaking down doors while

14 making felony arrests.  See Bordanaro, 871 F.2d at 1156.  In addition to other evidence that

15 indicated an unconstitutional policy or custom, the First Circuit found significance in the fact that

16 "the entire night watch" of the police department was involved in the entry at issue.  See id.  The

17 First Circuit then held, "[w]hile it is true that evidence of a single event alone cannot establish a

18 municipal custom or policy, where other evidence of the policy has been presented and the 'single

19 incident' in question involves the concerted action of a *large contingent of individual municipal*

20 *employees*, the event itself provides some proof of the existence of the underlying policy or

21 custom."  Id. at 1156-57 (emphasis added).  Here, the FAC has not identified any "large

22 contingent of municipal employees" who violated McFarland's rights.  Instead, the FAC identifies

23 essentially only two actors – Rios and the "tall officer."  A named officer and his partner is not a

24 "large contingent."  Accordingly, *Bordanaro* does not apply in this case.

25      In light of the above, there is no plausible *Monell* claim alleged under the Second Cause of

26 Action, and dismissal is appropriate.  See Young, 687 F.Supp.2d at 1149-50.

27

28
[2] The Fresno County Bail Schedule can be found at the following website:
http://www.fresno.courts.ca.gov/_pdfs/Bail%20Schedule/Fresno%20County%20Criminal%20Bail%20Schedule%202016.htm  (visited February 2016).

9

3.    Third Cause of Action – Fourth Amendment – Excessive Force

The FAC in general alleges that the officers acted pursuant to the training provided by the Clovis P.D. and pursuant to Clovis P.D. policy.  See FAC ¶¶ 17, 18.  More specifically, in relevant part the FAC alleges that:  ". . . the training that the arresting officers . . . received from Defendant Clovis P.D. did not adequately train the arresting officers . . . in the seizure, arrest, handcuffing, and detention of disabled individuals."  Id. at ¶ 20.

For the reasons explained under the First Cause of Action, the Court does not find that these allegations sufficiently state a plausible *Monell* claim.  First, although McFarland is attempting to allege that there is a training deficiency with respect to the arrest of disabled individuals, the FAC does not explain how the training is actually deficient or inadequate.  See Young, 687 F.Supp.2d at 1149.  Alleging that training is "deficient" or "inadequate" without identifying a specific inadequacy is conclusory and does not support a plausible claim.  See id. Further, the facts of this particular incident alone do not demonstrate inadequate training.  City of Canton, 489 U.S. at 391; Merritt, 875 F.2d at 770.  Second, there are no allegations that explain how the deficient training caused McFarland's injury.  See Young, 687 F.Supp.2d at 1149.  Third, in the absence of allegations that identify how training is deficient and how the training caused injury, it cannot be determined whether the City acted with deliberate indifference.  See id. at 1150.  Therefore, there is no plausible *Monell* claim with respect to the Third Cause of Action, and dismissal is appropriate.

## B.    Fourth Cause of Action – California Civil Code § 52.1

### *Defendants' Argument*

Defendants argue that the FAC does not even make conclusory allegations that any defendant interfered with McFarland's constitutional rights through threats, intimidation, or coercion.  There is only an allegation that defendants interfered with McFarland's rights by violently seizing and handcuffing him.  There are no facts alleged, and the allegations do not reflect a plausible § 52.1 claim.

### *Plaintiff's Opposition*

McFarland argues that the FAC alleges that the defendant officers violently seized,

arrested, and handcuffed him.  McFarland was incarcerated for approximately 56 hours before he was released from without being charged with a crime.  The officers were acting pursuant to a policy of the Clovis P.D., and they were inadequately trained regarding probable cause and the seizure and arrest of handicapped individuals.  McFarland argues that these allegations are sufficient to state a claim under Rule 12(b)(6).

### _Legal Standard_

California Civil Code § 52.1 provides a cause of action for violations of constitutional and statutory rights.  Rivera v. County of L. A., 745 F.3d 384, 393 (9th Cir. 2014).   The essence of a § 52.1 claim is that "the defendant, by the specified improper means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law."  Jones v. Kmart Corp., 17 Cal.4th 329, 334 (1998); Shoyoye v. County of L. A., 203 Cal.App.4th 947, 955-56 (2012).  Therefore, there are two distinct elements for a § 52.1 claim: (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion. Allen v. City of Sacramento, 234 Cal.App.4th 41, 67 (2015).  In a search-and-seizure case, the plaintiff "must allege threats or coercion beyond the coercion inherent in a detention or search in order to recover under [§ 52.1]."  Lyall v. City of L. A., 807 F.3d 1178, 1196 (9th Cir. 2015); see also Allen, 234 Cal.App.4th at 69; Shoyoye, 203 Cal.App.4th at 960.  Where an arrest is "unlawful and excessive force is applied in making the arrest, there has been coercion 'independent from the coercion inherent in the wrongful detention itself.'"  Bender v. Count of L.A., 217 Cal.App.4t h 968, 978 (2013).

### _Discussion_

Under the Fourth Cause of Action, the FAC alleges in part that the defendant officers violated the Fourth Amendment when they "violently seized and handcuffed Plaintiff McFarland, arrested [him] on January 25, 2015, and falsely imprisoned [him] for approximately 56 hours." FAC ¶ 40.  Although detention, handcuffing, and transporting are coercive actions, they are actions that are an inherent part of any arrest.  Ruiz v. Flores, 2015 U.S. Dist. LEXIS 27209, *31

1   (E.D. Cal. Mar. 4, 2015). As such, the mere fact of detention, handcuffing, and transportation

2   cannot from the basis of a § 52.1 claim. See Lyall, 807 F.3d at 1196; Ruiz, 2015 U.S. Dist.

3   LEXIS 27209 at *31; Allen, 234 Cal.App.4th at 69; Shoyoye, 203 Cal.App.4th at 960.

4           The allegation that the officers "violently" did these acts does not save the claim because

5   there is no description of how the officers' conduct was "violent." However, the Fourth Cause of

6   Action incorporates all prior allegations by reference. The most relevant incorporated allegation

7   appears to be Paragraph 9. That paragraph in part describes the "tall officer" grabbing hold of

8   McFarland's right arm and twisting the right arm behind McFarland's back, while Rios grabbed

9   McFarland's left arm. See FAC ¶ 9. The officers then handcuffed McFarland. See id. Even

10  viewing Paragraph 9 in the light most favorable to McFarland, see Faulkner, 706 F.3d at 1019,

11  there is no "violent" conduct. A person can be handcuffed with his hands either in front or behind

12  him. E.g. Franklin v. Foxworth, 31 F.3d 873, 875 (9th Cir. 1994) (noting that an individual was

13  initially handcuffed with his hands behind his back, but the handcuffs were later moved so that his

14  hands were in front); Ladd v. County of San Mateo, 12 Cal.4th 913, 916 (1996) (suspect was

15  handcuffed with his hands in front of him); Nelson v. County of L.A., 113 Cal.App.4th 783, 787

16  (2002) (individual was handcuffed with hands behind his back). All that is fairly described in

17  Paragraph 9 is the officers touching McFarland and maneuvering his arms in place for

18  handcuffing. See Bender, 217 Cal.App.4t h at 972-73 (". . . Deputy Sorrow took [Bender's]

19  hands, pulled them behind his back, and handcuffed him, saying [Bender] was under arrest . . .

20  .").[3] Some amount of force or touch is necessary in order for a person to be handcuffed, and there

21  are no factual allegations that indicate the officers "violently" touched McFarland or used

22  excessive force while in the process of handcuffing him. For example, there are no allegations

23  that the officers struck McFarland or placed McFarland in a control/pain-compliance hold. Merely

24  using the adverb "violently" alone does not demonstrate coercion beyond what is inherent in any

25

26  [3] Deputy Sorrow and another deputy later used excessive force against Bender (using pepper spray and physical blows) after he was handcuffed and led towards a patrol car. See Bender, 217 Cal.App.4th at 973, 978. There is no

27  indication that Deputy Sorrow's actions in placing the handcuffs on Bender constituted either excessive force or coercion beyond what is inherent in being arrested. See id. at 978 (". . . [§ 52.1] applies because there was a Fourth

28  Amendment violation – an arrest without probable cause – accompanied by the beating and pepper spraying of an unresisting plaintiff, i.e. coercion that is in no way inherent in an arrest . . . .").

1  detention, handcuffing, or arrest.  <u>See</u> <u>Allen</u>, 234 Cal.App.4th at 639.

2        Nevertheless, aside from "violent" conduct alleged in Paragraph 9, there are allegations in

3  Paragraphs 9, 11, and 34 that McFarland told the officers both prior to transport and during

4  transport that he was disabled, the handcuffs were hurting him, and that the handcuffs should be

5  removed.  <u>See</u> FAC ¶¶ 9, 11, 34.  The Court finds that the FAC can be reasonably read as alleging

6  that the handcuffs were too tight and caused McFarland pain, yet the officers did nothing to loosen

7  or check the handcuffs.  The Ninth Circuit has recognized that tight handcuffs can amount to

8  excessive force.  <u>Wall v. County of Orange</u>, 364 F.3d 1107, 1112 (9th Cir. 2004); <u>LaLonde v.</u>

9  <u>County of Riverside</u>, 204 F.3d 947, 960 (9th Cir. 2000).  Therefore, the allegations regarding

10 painful handcuffing, i.e. tight handcuffing, indicate excessive force was used during the arrest and

11 transport of McFarland.  <u>See</u> <u>id.</u>

12       When combined with the claims for arrest without probable cause, <u>see</u> FAC ¶ 25, the FAC

13 can be viewed as alleging an arrest without probable cause that was accompanied by excessive

14 force, i.e. tight handcuffs.  Under *Bender*, the tight handcuffing represents "coercion independent

15 from the coercion inherent in the wrongful detention itself," and is a viable basis for a § 52.1

16 claim.  <u>Bender</u>, 217 Cal.App.4th at 978.  As McFarland has alleged a viable § 52.1 claim through

17 the absence of probable cause to arrest and tight handcuffs, dismissal is not appropriate.  <u>Id.</u>

18

19 **II.     Official Capacity, the City, & Clovis P.D.**

20       A suit against an individual police officer in his official capacity is really a suit against the

21 municipal entity that employs the officer.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-67 (1985);

22 <u>Community House, Inc. v. City of Boise</u>, 623 F.3d 945, 966-67 (9th Cir. 2010).  Also, police

23 departments are sub-units/departments of a municipal entity; they generally are not considered

24 proper defendants in a § 1983 suit.  <u>See</u> <u>Nelson v. County of Sacramento</u>, 926 F.Supp.2d 1159,

25 1165 (E.D. Cal. 2013); <u>Gonzales v. City of Clovis</u>, 2013 U.S. Dist. LEXIS 12719, *39-*40 (E.D.

26 Cal. Jan. 29, 2013); <u>Nichols v. Brown</u>, 859 F.Supp.2d 1118, 1136-37 (C.D. Cal. 2012); <u>Vance v.</u>

27 <u>County of Santa Clara</u>, 928 F.Supp. 993, 996 (C.D. Cal. 1996).

28       Here, McFarland has brought suit against the City, the Clovis P.D., and Rios in his official

13

capacity as a City police officer.  These are clearly attempts to allege municipal liability against

the City.  Because the City is a named defendant, naming the Clovis PD and Rios in an official

capacity is redundant.  See Vance, 928 F.Supp. at 996.  Therefore, the Court will dismiss without

leave to amend the Clovis P.D. and Rios in his official capacity.[4]  See id.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1.    Defendants' motion to dismiss the *Monell* claims in the first, second, and third causes of

action is GRANTED and those claims are DISMISSSED with leave to amend;

2.    Defendants' motion to dismiss the Fourth Cause of Action is DENIED with respect to

claims based on tight handcuffing;

3.    Defendants' motion to dismiss the Fourth Cause of Action is otherwise GRANTED and

claims based on conduct other than tight handcuffing are DISMISSED with leave to

amend;

3.    Defendants Clovis Police Department and Jacob Rios in his official capacity are

DISMISSED without leave to amend;

4.    Plaintiff may file an amended complaint that addresses the deficiencies identified in this

order within fourteen (14) days of service of this order; and

5.    If Plaintiff does not file an amended complaint, Defendants shall file an answer within

twenty-one (21) days of service of this order.

IT IS SO ORDERED.

Dated:   February 16, 2016

_____

SENIOR  DISTRICT  JUDGE

---

[4] The claims against the City and the claims against Rios in his *individual capacity* are unaffected by the dismissal of the Clovis P.D. and Rios in his *official capacity*.  See Community House, 623 F.3d at 966-67.