# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

LYLE S. McFARLAND,

              **Plaintiff**

       **v.**

CITY OF CLOVIS, et al.,

            **Defendants**

**CASE NO. 1:15-CV-1530 AWI SMS**

**ORDER ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT**

**(Doc. Nos. 37, 48)**

    This case arises from an encounter between Plaintiff Lyle McFarland ("McFarland") and Defendant Officers Jacob Rios ("Rios") and Richard Collins ("Collins") of the City of Clovis Police Department ("Clovis P.D.").  Currently before the Court is McFarland's motion for summary judgment with respect to the first, second, fourth, sixth, and seventh causes of action on the ground that there was no probable cause to arrest him under California Penal Code § 422, and Defendants' motion for summary judgment on all claims.  For the reasons that follow, McFarland's motion will be denied and Defendants' motion will be granted in part and denied in part.

## SUMMARY JUDGMENT FRAMEWORK

    Cross motions for summary judgment are evaluated separately under the same standards that apply to single summary judgment motions.[1]  See Pintos v. Pacific Creditors Ass'n, 565 F.3d 1106, 1111 (9th Cir. 2009); ACLU v. City of Las Vegas, 466 F.3d 784, 790 (9th Cir. 2006).  Summary judgment is proper when it is demonstrated that there exists no genuine issue as to any

---

[1] As stated above, the parties have cross motions for summary judgment with respect to the first, second, fourth, sixth, and seventh causes of action.

material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Fortyune v. American Multi-Cinema, Inc.</u>, 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986); <u>United States v. Kapp</u>, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 248; <u>Freecycle Sunnyvale v. Freecycle Network</u>, 626 F.3d 509, 514 (9th Cir. 2010).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. <u>Soremekun</u>, 509 F.3d at 984. Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. <u>See</u> <u>James River Ins. Co. v. Herbert Schenk, P.C.</u>, 523 F.3d 915, 923 (9th Cir. 2008); <u>Soremekun</u>, 509 F.3d at 984. If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1105-06 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); <u>Nissan Fire</u>, 210 F.3d at 1103. The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" <u>Estate of Tucker v. Interscope Records</u>, 515 F.3d 1019, 1030 (9th Cir. 2008).

The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010). While a "justifiable inference" need not be the most likely or the most persuasive inference, a "justifiable inference" must still be rational or reasonable. See Narayan, 616 F.3d at 899. Summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts." Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015); see also Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1175 (9th Cir. 2003). Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Fitzgerald v. El Dorado Cnty., 94 F.Supp.3d 1155, 1163 (E.D. Cal. 2015); Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002). The parties have the obligation to particularly identify material facts, and the court is not required to scour the record in search of a genuine disputed material fact. Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010). Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. Nissan Fire, 210 F.3d at 1103.

## FACTUAL BACKGROUND[2]

On January 25, 2015, at approximately 11:50 a.m., Keith McFarland ("Keith") went to the Clovis PD lobby to complain about the conduct of his older brother Lyle McFarland. JUMF 1.

---

[2] "PUMF" refers to "Plaintiff's Undisputed Material Fact" (Doc. No.37-1), "DUMF" refers to "Defendants' Undisputed Material Fact" (Doc. No. 48-3), and "JUMF" refers to "Joint Undisputed Material Fact" (Doc. No. 48-2).

Keith reported that McFarland had threatened to kill him. DUMF 1. Keith spoke to dispatch at the lobby and then Keith and Rios went into an interview room. See JUMF 2. Keith informed Rios that he had an ongoing issue with his brother throughout their lifetime, specifically an incident in Carlsbad where there was a physical fight between the brothers. Id.

Keith reported that McFarland had left a voice message on Keith's answering machine/voice mail. See DUMF 2. Rios listened to the voice message and recalls that it was a low, gravelly voice, that sounded angry and the statement was something to the effect of "you will pay, the time is now." Rios Depo. 23:7-12. The message that McFarland left Keith was: "What's your excuse, Keith? You owe me. I need to collect. Let's see. I don't know how I am going to collect for my arm, but I'll figure something out. Yeah. You're going to pay now, it's time." JUMF 5. The message was left on January 23, 2015, but it was not received until January 24, 2015. See Drooyan Dec. Ex. 22 at p. 198; Doc. No. 50-2 at #8; Rios Depo. 22:15-23:1. Keith told Rios that "the voice message was a threat to harm him," although it did not say physically harm him, and Keith "was concerned due to the tone of the message." See JUMF 6. According to the "Narrative" section of the "Online Law Enforcement Warrantless Arrest Declaration" of Rios (Drooyan Opp. Dec. Ex. 4), the tone of the voice message that McFarland left on Keith's phone was threatening but not specific. See PUMF 10.[3] Keith also told Rios that, at 8:53 a.m. that day, he had received an electronic message/text message from McFarland on January 25 that was a picture of shot gun shells spelling out "FUCK U" on a night stand, and there was also a hunting knife standing erect on the nightstand. See JUMF 7. Keith showed the picture to Rios.[4] Id. McFarland had sent this text message to Keith at 3:00 a.m. on January 25. See JUMF 8. Keith informed Rios that McFarland had a shotgun. See JUMF 10.

Keith also reported to Rios that "there had been long-term kind of volatile history between [Keith] and his brother, and that according to [Keith], [McFarland], over time, had become more

---

[3] Defendants object in part that PUMF 10 is based on a hearsay document, Rios's Warrantless Arrest Declaration. The Court cannot agree. As the name suggests, the document is a declaration made under penalty of perjury by Rios. See Drooyan Dec. Ex. 4. Since Rios is a defendant, the Warrantless Arrest Declaration is an admission of a party opponent, which means that by definition it is not hearsay. See Fed. R. Evid. 801(d)(2)(A).

[4] Rios later attached a copy of the texted photo to the police report. PUMF 23.

and more hostile and verbally aggressive to the point where at least a year prior, [Keith] decided to actually block [McFarland]'s phone number from allowing texts and phone numbers." JUMF 3. Some of McFarland's behavior that Keith told Rios included: (1) McFarland came by Keith's home at odd hours because on one occasion Keith found a gift that he had given McFarland smashed to pieces in Keith's driveway; (2) McFarland sent text messages or made phone calls in which he threatened to destroy Keith's business and called Keith an abuser; (3) McFarland sent a text for Keith to watch his back when he is hanging around downtown Clovis and that McFarland was going to drop Keith where he stands; and (4) a group that follows people around would grab Keith if Keith was driving haphazardly and under the influence, and that Keith was going down (or words to that effect). See DUMF's 9, 10; Keith Depo. 99:17-25.[5] Keith told Rios that, "within the past few weeks, few days when the block expired, [Keith] immediately began receiving phone calls and texts from his brother again." JUMF 4. Keith was noticeably fearful. See DUMF 14. Rios reported that Keith said he (Keith) believed McFarland was threatening to kill him with a shotgun, that he was in fear of his life, and that he believed that the threat was imminent.[6] See Drooyan Dec. Ex. 4. Keith wanted criminal charges pursued against McFarland. See JUMF 11.

Rios made the decision to arrest McFarland for violation of California Penal Code § 422 ("§ 422") based on his interview with Keith, the voice message that Keith played for Rios, the texted photo of the shotgun shells and hunting knife, and Keith's fearful state. See PUMF's 3, 11. Rios's Warrantless Arrest Declaration and Rios's police report do not expressly discuss

[5] McFarland disputes DUMF's 9 and 10 and Keith's testimony because the statements by Keith were not included in Rios's report/narrative, Rios did not testify to these events during his deposition, and the Clovis PD's investigation did not mention these statements. The Court cannot say that a genuine dispute exists. First, Keith clearly testified that he told these things to Rios. See Keith Depo. 99:17-102:5. Second, McFarland does not identify which portions of McFarland's deposition either contradict Keith's testimony, or somehow limit the information that Keith provided to Rios during the interview, e.g. "Is this all that Keith said?" or "Did Keith tell you anything else?" Third, McFarland has not identified any cases which hold that a police report must include all information relayed to the officer, or that a failure of the officer to include certain information within a report, per se creates a genuine dispute as to whether the information was given to the officer. Cf. B.R. v. McGivern, 2016 U.S. Dist. LEXIS 135754 *28 (N.D. Ohio Sept. 30, 2016) ("Plaintiffs appear to assert that this Court should place some significance on the lack of information placed into the police reports. Plaintiffs, however, have not identified any legal duty to include every piece of information in the generated reports . . . ."). Fourth, the Clovis PD investigation indicates that Rios was asked to summarize his investigation, not go into detail. See Drooyan Opp. Dec. Ex. 22 at 201. Rios stated that Keith was in fear "based on the history, prior threats, and the nature of the texted message." Id. at pp.201-02. Keith's testimony consists of prior history and threats. For these reasons, a genuine dispute does not exist.

[6] DUMF's 11, 12, and 13 deal with Keith's subjective beliefs and interpretation of the text and voice messages. Because Keith did not tell Rios the specific beliefs, the Court will not consider DUMF's 11, 12, and 13.

McFarland's specific intent.  See Drooyan Dec. Exs. 4, 5; see also PUMF 11.

On January 25, 2015 at 3:20 p.m., McFarland was arrested without a warrant at his residence by Rios, who was assisted by Collins, for violation of § 422.  See JUMF 12.

Just prior to the arrest, Rios knocked on McFarland's front door and announced that he was with the police department.  DUMF 4.  Approximately 5 seconds later, McFarland looked out his window and told Rios that he was going to get his keys.  See id.  Rios recognized McFarland from McFarland's DMV photo.  See id.  McFarland opened the door approximately 30 seconds later.  See id.  At that time, Rios had the following officer safety concerns:  (1) he knew that he was dealing with a felony suspect and that firearms were mentioned or involved, and whenever he investigates those types of crimes he is concerned for his safety; (2) he saw a camera focusing out through the window towards the front door, which led him to believe that the person inside might have knowledge that police officers were there; (3) the delay in McFarland coming to the door, and not knowing what McFarland was going to get.  See Rios Depo. 58:4-20.[7]  Rios was concerned that there could be anything waiting on the inside of the door.  See id. at 58:21-22.

When McFarland opened the door, he was barraged by questions about the location of his cell phone and shotgun.  See McFarland Depo. 37:12-13.  Rios asked if the officers could come inside and talk, and McFarland said "no."  See id. at 37:13-15.  Collins asked about the location of McFarland's shotgun and cell phone, and asked McFarland to step outside and talk.  See id. at 37:15-17.  About thirty seconds after he had opened the door, McFarland put his foot on the threshold, Collins reached in, grabbed McFarland's right hand and thumb, turned McFarland's right arm and hand around and up to the middle of McFarland's back, and Rios grabbed McFarland's left arm and turned it up to the middle of McFarland's back.  See id. at 37:18-22; McFarland Dec. ¶ 5.  Collins had his hand pinching a nerve in McFarland's arm and was squeezing McFarland's arm hard.  See id. at 41:25-42:13.  The officers bent McFarland over.  See

---

[7] McFarland disputes this testimony because inter alia it was not corroborated by either Rios's police report or the Clovis PD internal investigation.  See Doc. No. 50-2 at #5.  However, McFarland does not point to anything that actually contradicts Rios's testimony.  The Court is aware of no requirement that an officer must include every thought or detail within a police report, or that the failure to do so creates a genuine dispute for purposes of summary judgment.  Cf. B.R., 2016 U.S. Dist. LEXIS 135754 at *28.  Further, a review of the Clovis PD report does not indicate that Rios was asked about any officer safety concerns at the time McFarland opened the door.  See Dooryan Opp. Dec. Ex. 22.  Therefore, there is no genuine dispute.

id. at 44:19-20. Rios put handcuffs on McFarland. See id. at 38:3, 42:4-7. Rios was shaking like a leaf and obviously nervous. See id. at 37:24-25.

As the handcuffs were being applied, McFarland complained about his arm and told the officers over and over again that he was disabled. See id. at 41:23-42:20, 43:16-20, 44:10-22. The officers at some time stated, "We know that your brother hurt your arm, you can use this in your defense," Id. at 41:19-20, or "Your brother Keith says he hurt your arm. Why don't you tell us about that, that could help in your defense." Id. at 47:18-24. Rios and Collins escorted McFarland to their patrol car, which took about 10 minutes as Rios had to retrieve the car. See McFarland Dec. ¶ 7. In response to McFarland's complaints that his arm hurt and that he was disabled, Rios put another pair of handcuffs on McFarland and then put McFarland in the back of a patrol car. See JUMF 13. McFarland is 6'1" and about 270 lbs. See JUMF 14. McFarland told Rios and Collins six or more times that being handcuffed behind his back was causing his disabled arm great pain. See id. McFarland asked the officers to be handcuffed with his arms in front, but the officers did not respond to his requests. See id. Clovis PD trains their officers that it is permissible, on a decisional basis, to handcuff a person in front. See Jackson Depo. 11:15-18.

After the arrest, and with the assistance of Officer Martin, Rios applied for and obtained a search warrant for McFarland's residence. See JUMF 15. A judicial officer found probable cause for the issuance of the search warrant and thus, issued the warrant on January 25, 2015. See id.

McFarland was in custody following his arrest, including incarceration in the Fresno County Jail, until January 27, 2015 at 8:52 p.m., when he was released without being charged with a crime. See PUMF 2. Fresno County Deputy District Attorney Caples issued a "No Charges Initiated Interagency Memorandum." See Drooyan Dec. Ex. 3. Caples's memorandum indicates that there was "insufficient evidence," that the "documented material, text, and photo do not amount to a violation of [§ 422]. They lack sufficient specificity or intent." Id.

Prior to arresting McFarland, Rios consulted Sgt. Dave Smith, his supervisor at the Clovis PD. See PUMF 5. Rios presented information to Smith, and Rios and Smith reviewed the elements of § 422. See PUMF 6; Smith Depo. 13:6-14:17. The elements that Smith reviewed with Rios were that a threat was made and that the threat was credible, with a high likelihood to

create great bodily injury.  <u>See</u> Smith Depo. 14:18-15:7; <u>see also</u> PUMF 6.  Smith does not recall whether he ever discussed the specific intent element of § 422 with Rios.  <u>See</u> Smith Depo. 48:1-10.  Smith concurred with Rios's decision to arrest McFarland for violating § 422.  <u>See</u> PUMF 14.

Rios also discussed the case with Collins.  <u>See</u> PUMF 8.  Rios discussed the "highlights" of the case.  <u>See</u> Collins Depo. 12:8-13.  Rios and Collins discussed part of the elements of § 422, discussed what Keith believed was a credible threat and why, and discussed possible crimes implicated, but they did not discuss specific intent.  <u>See</u> <u>id.</u> at 12:23-14:21.

Rios's determination to arrest McFarland for violating § 422 complied with, and did not violate, Clovis PD policy.  <u>See</u> PUMF 13.

## PARTIES' MOTIONS

### I.    First Cause of Action – Arrest Without Probable Cause

*Plaintiff's Argument*

McFarland argues that Rios did not have probable cause.  Rios's arrest report and warrantless arrest declaration do not identify a specific intent to immediately and unequivocally threaten Keith with a crime, nor do they identify any crime that was allegedly threatened.  Rios acknowledged that the voice mail and text message lacked specificity.  This admission is consistent with the assessment of the Fresno County District Attorney's office, which declined to bring charges because the documentary evidence presented to it lacked the specificity and intent needed for a violation of § 422.  Due to a lack of specificity and intent, Rios did not have probable cause to believe that McFarland violated § 422.  Further, the City is liable because Rios, Collins, and Smith believed that there was sufficient evidence for an arrest under § 422, the City found no violation of policy from the arrest, and the City admitted that the arrest conformed to policy.

In reply, McFarland emphasizes "specific intent" was not discussed in Rios's police report and his warrantless arrest declaration, nor was it discussed in the Clovis PD investigative report.  Further, significant portions of the information that Keith said that he told Rios was not included in Rios's report and his warrantless arrest declaration, nor was it included in the Clovis PD investigative report, and thus, is uncorroborated.  Further, Rios's investigation did not include a

criminal background check on McFarland or Keith and did not include interviews with family members or anyone who knew McFarland or Keith. There is also a discrepancy regarding what Keith told Rios. Whereas Rios's report states that months prior to blocking McFarland's phone, McFarland texted Keith that he would "shoot [Keith] where he stands," Keith's deposition states that "he received threating text messages that [McFarland] will drop him where he stands." The "drop" statement is not in Rios's report, Rios's warrantless arrest declaration, or the Clovis PD investigative report. This discrepancy in language and substance shows that Keith is a liar.

In opposition to Defendants' motion, McFarland reiterates the above arguments. Further, McFarland points out that although Rios's narrative indicates that Keith received the telephone message on January 24, 2015, a Clovis PD investigator noted that the message was left on January 23, 2015, and telephone records show that no calls were made from McFarland to Keith on January 24, 2015. This discrepancy shows Rios's bad faith and culpability for not determining when the voice message was left. Defendants have not shown when the voice message was actually left or that it was left in connection with the text message. No evidence indicates that the text message and voice message are connected, and neither the text message nor the voice message alone support probable cause to arrest under § 422.

*Defendants' Argument*

Defendants argue that probable cause existed to arrest McFarland. The text message might seem ambiguous, but it is given meaning by the past history. Rios knew about the physical altercation between Keith and McFarland, McFarland's other harassing and threatening messages to Keith, the voice message in which McFarland said that Keith was going to pay and the time was now, and that McFarland owned a shotgun. All of this information was relayed to Rios by Keith himself. All of these considerations show that probable cause existed. In fact, probable cause exists based on the text message and voice message alone. As to the intent element, given the brothers' history, and the content of the text message, it is apparent that McFarland intended Keith to take the text message as a threat. Additionally, with respect to liability for the City, McFarland has no evidence of any deliberate policy, custom, or practice that is the moving force behind any constitutional violation. The Clovis PD policies in effect at the time are constitutional.

In reply, Defendants argue that the discrepancy between when the voice message was left (either January 23 or January 24) is irrelevant because the totality of the circumstances still indicate that probable cause existed. Further, reliance on the Deputy District Attorney Caples's decision to not to file charges is irrelevant, and in any event Caples's decision was based on an evaluation of the evidence under the beyond a reasonable doubt standard, not the probable cause standard. McFarland does not attempt to explain how the totality of the circumstances does not demonstrate probable cause.

In opposition to McFarland's motion, Defendants essentially make the same arguments that they did in support of their motion.

### *Legal Standards*

#### a.    Probable Cause

"The Fourth Amendment requires police officers to have probable cause before making a warrantless arrest." Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009). Therefore, the absence of probable cause is a necessary element to a § 1983 false arrest claim. See Yousefian v. City of Glendale, 779 F.3d 1010, 1014 (9th Cir. 2015). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." John v. City of El Monte, 515 F.3d 936, 940 (9th Cir. 2008); see also Lingo v. City of Salem, 832 F.3d 953, 960 (9th Cir. 2016). "Generally, officers need not have probable cause for every element of the offense, but they must have probable cause for specific intent when it is a required element." Edgerly v. City & County of San Francisco, 599 F.3d 946, 953 (9th Cir. 2010); see Blankenhorn v. City of Orange, 485 F.3d 463, 472 (9th Cir. 2007). "Probable cause" does not require "certainty," a "preponderance of the evidence," or even a *prima facie* showing, it simply requires a "fair probability." See United States v. Gourde, 440 F.3d 1065, 1069, 1073 (9th Cir. 2006). Courts look to "the totality of the circumstances known to the arresting officers, to determine if a prudent person would have concluded there was a fair probability that the defendant had committed a crime." John, 515 F.3d at 940; see also Lingo, 832 F.3d at 960. "Probable cause is an objective standard and the officer's subjective intention in

1  exercising his discretion to arrest is immaterial to judging whether his actions were reasonable for

2  Fourth Amendment purposes." John, 515 F.3d at 940; see Devenpeck v. Alford, 543 U.S. 146,

3  153 (2004) ("Our cases make clear that an arresting officer's state of mind (except for the facts

4  that he knows) is irrelevant to the existence of probable cause.").

5        b.    Penal Code § 422[8]

6       California Penal Code § 422 prohibits making "criminal threats."  See Cal. Pen. Code §

7  422; In re George T., 33 Cal.4th 620, 630 (2004); People v. Toledo, 26 Cal.4th 221, 227 (2001).

8  The elements of a § 422 offense are: "(1) willfully threatening to commit a crime that will result in

9  death or great bodily injury to another person; (2) specific intent that the statement be taken as a

10  threat; (3) the threat was on its face and under the circumstances so unequivocal, unconditional,

11  immediate, and specific as to convey to the person threatened, a gravity of purpose and an

12  immediate prospect of execution of the threat; (4) the threat caused the victim to be in sustained

13  fear for his or her own safety or for his or her immediate family's safety; and (5) the victim's fear

14  was reasonable under the circumstances." Coquico v. Lynch, 789 F.3d 1049, 1053 n.3 (9th Cir.

15  2015) (quotations omitted); see George T., 33 Cal.4th at 630; Toledo, 26 Cal.4th at 227-28.  The

16  threat may be made "verbally, in writing, or by means of an electronic communication device."

17  Cal. Pen. Code § 422; George T., 33 Cal.4th at 630.  In determining whether a defendant intended

18  his words to be taken as a threat, and whether the words were sufficiently unequivocal,

19  unconditional, immediate and specific they conveyed to the victim an immediacy of purpose and

20  immediate prospect of execution of the threat, courts should consider all of the surrounding

21  circumstances and the parties' history.  People v. Smith, 178 Cal.App.4th 475, 480 (2009); People

22  v. Butler, 85 Cal.App.4th 745, 754 (2000); People v. Mendoza, 59 Cal.App.4th 1333, 1340 (1997).

23  A communication that is ambiguous on its face may nonetheless be found to be a criminal threat if

24

25  [8] Penal Code § 422 in relevant part provides:  "Any person who willfully threatens to commit a crime which will
result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in

26  writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of
actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal,

27  unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate
prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own

28  safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed
one year, or by imprisonment in the state prison."  Cal. Pen. Code § 422(a).

the surrounding circumstances clarify the communication's meaning.  George T., 33 Cal.4th at 635; see also Butler, 85 Cal.App.4th at 753.

*Discussion*

a.    Individual Liability

For purposes of § 422, it seems that the key "statement" is the January 25 text message. The text message was actually a picture of the top of a small table or nightstand.  See Smith Opp. Dec. Ex. B.  On the tabletop are shotgun shells that are arranged to spell out "FUCK U."  See id. Significantly, there is what appears to be a large fixed-blade hunting knife that is standing erect and stabbed into the tabletop at the top of the first shotgun shell letter "U."[9]  See id.

To give the text message context, Rios was informed of some of the turbulent history between Keith and McFarland.  As discussed above, Keith told Rios that the brothers had previously been in a physical fight in Carlsbad,[10] there had been a long term volatile history, and McFarland had become more hostile and verbally aggressive to the point that Keith blocked McFarland's phone number so that Keith would not receive texts and calls from McFarland.  See JUMF's 2, 3.  There is no genuine dispute that Keith also informed Rios about harassing and threatening messages from McFarland that indicated that Keith was an abuser, that Keith should watch his back, and that McFarland would either "drop him [Keith] where he stands" or that McFarland would "shoot him [Keith] where he stands."[11]  See DUMF's 9, 10; Keith Depo. 99:22-25.  Shortly after the phone block expired, Keith listened to the voice message in which McFarland:  asked for Keith's excuse, said that Keith owed him, that he needed to collect from Keith, that he would figure something out to collect for his (McFarland's) right arm, said that

---

[9] The copies of the text that have been provided to the Court are not the most clear.  In addition to the knife and shotgun shells (which are reasonably clear), there appears to be a picture/artwork, three boxes of shotgun shells (at least two of which appear to be empty), and a prescription medication bottle.  See Smith Opp. Dec. Ex. B.

[10] Rios's deposition indicates that the fight had occurred about three years prior.  See Rios Depo. 21:20-22:4.

[11] Keith testified that he told Rios that McFarland had said in a text message that he would "drop" Keith.  See Keith Depo. 99:22-25.  In his report, Rios stated that Keith had said McFarland would "shoot" Keith.  See Drooyan Dec. Ex. 5 at 16.  "Drop" is a somewhat ambiguous term, and in this context and could conceivably be a synonym for "shoot." Nevertheless, the important point is the fact that some kind of hostile text message was sent to Keith that McFarland would either shoot or drop him, and that was relayed to Rios.  The ultimate conclusion of probable cause remains the same regardless of which word is accepted.

Keith was going to pay, and that it was time. See JUMF 5. Rios listened to the message, and Keith told Rios that the message was a threat to harm him. See JUMF's 5, 6. The message was left on Keith's cell phone about two days before the shotgun shells and hunting knife text message. Keith was visibly fearful and told Rios that he was in fear, believed an attack was imminent, believed that McFarland was threatening to harm or shoot him, and that McFarland had a shotgun.

Viewing the totality of the circumstances and the parties' history, the Court concludes that a reasonably prudent person would find a fair probability that McFarland violated § 422. See Lingo, 832 F.3d at 960; Coquico, 789 F.3d at 1053 n.3; John, 515 F.3d at 940; George T., 33 Cal.4th at 630; Mendoza, 59 Cal.App.4th at 1340-41. Shotgun shells, when combined with a shotgun, are capable of causing tremendous bodily harm to a person. A hunting knife is also capable causing tremendous bodily harm. These items were not in containers or simply "lying about" in a random photo. The shells were arranged in an insulting manner and the hunting knife was actually stabbed into the tabletop. By itself, the text is objectively menacing and suggests a threat. The sense of a threat is confirmed by the voice message in which McFarland states that he will have to figure out a way for Keith to pay him back for McFarland's arm and that it was time for Keith to pay. Sending a provocative picture of shotgun shells and a hunting knife stabbed into a tabletop could reasonably indicate that McFarland had figured out a way for Keith to pay and would use the items pictured in the text message against Keith. Further, the phrase "time to pay" suggests immediacy, and the sense of immediacy was heightened because the text was received within two days of the voice message. Also, the volatile history that Keith relayed to Rios involved escalating harassing behavior from McFarland, all of which appears to have stemmed from a physical fight in Carlsbad several years prior. The text message could reasonably be viewed as the culmination of the escalating behavior. Finally, Keith stated that he was fearful, he appeared to Rios to be fearful, and he had been in receipt of the text message for approximately three hours by the time he spoke to Rios. See People v. Wilson, 234 Cal.App.4th 193, 201 (2015) (noting that "sustained fear" for purposes of § 422 "occurs over a period of time that extends beyond what is momentary, fleeting, or transitory," and that "[15] minutes of fear is more than sufficient . . . .").

McFarland argues that the above evidence does not sufficiently show intent. The intent that is required under § 422 is the intent for a statement to be taken as a threat. Coquico, 789 F.3d at 1053 n.3; George T., 33 Cal.4th at 630; Toledo, 26 Cal.4th at 228. Circumstantial evidence is sufficient to demonstrate intent under § 422. See In re A.S., 2016 Cal. App. Unpub. LEXIS 1873, *9 (Mar. 15, 2016);[12] In re B.C., 2015 Cal.App. Unpub. LEXIS 803, *9-*10 (Feb. 4, 2015); People v. Kirk, 2009 Cal. App. Unpub. LEXIS 7972, *11-*12 (Oct. 5, 2009). Here, McFarland never explains the intent behind the text message or voice message. Nevertheless, as discussed above, the text by itself is menacing. When the text is considered with the brothers' history and especially the voice message to pay now, a threat to use the hunting knife and/or the shotgun shells and shotgun on Keith is reasonably seen. In fact, this is the interpretation that Keith gave to Rios. See Drooyan Dec. Ex. 4. Given the combined effect of the text message and the voice message, the mere fact that the text was sent at all indicates a fair probability that McFarland intended Keith to take the text as a threat. See John, 515 F.3d at 940; A.S., 2016 Cal. App. Unpub. LEXIS 1873 at *9; Kirk, 2009 Cal. App. Unpub. LEXIS 7972 at *11-*12.

McFarland also argues that nothing in Rios's report or warrantless arrest declaration shows that Rios considered McFarland's intent or that Rios was aware of the intent element. It is true that Rios's report and arrest declaration do not expressly discuss McFarland's intent. However, probable cause is an objective standard, and the subjective thoughts and intent of the officer is not considered. See Devenpeck, 543 U.S. at 153; United States v. Magallon-Lopez, 817 F.3d 671, 675 (9th Cir. 2016) (in the context of a traffic stop, holding that the standard for probable cause is an "objective one" that does not turn "on the subjective thought processes of the officer . . . ."); Abbott v. Sangamon Cnty., 705 F.3d 706, 714 (7th Cir. 2013) ("Determining whether an officer had probable cause to arrest entails a purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant."); John, 515 F.3d at 940. As long as a prudent person would view the facts that were known by Rios and find probable cause for the intent element, there is no constitutional violation. See Devenpeck, 543 U.S. at 153; Magallon-Lopez, 817 F.3d at 675; John,

---

[12] Despite state rules, the Court may consider unpublished state cases as persuasive authority. See Employers Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003); Robles v. Agreserves, Inc., 158 F.Supp.3d 952, 976 n.12 (E.D. Cal. 2016).

515 F.3d at 940. As discussed above, the facts communicated to and known by Rios are sufficient to show probable cause to believe that McFarland intended the text to be a threat. That Rios may not have considered McFarland's intent or been aware of the intent element is irrelevant. See Devenpeck, 543 U.S. at 153; Magallon-Lopez, 817 F.3d at 675; Abbott, 705 F.3d at 714; John, 515 F.3d at 940.

McFarland argues that there is a dispute about when the voice message was sent in that Rios indicates that it was left and received on January 24, but the Clovis PD investigative report indicates that message was left on January 23, and there is nothing to connect the voice message to the text message. Assuming without deciding that Rios told the Clovis PD that the voice message was left on January 23,[13] the result of the analysis above does not change. The difference is only that one additional day separates the two messages. Whether there is one day or two days separating the messages, the time period is quite short and the effects of the voice message would likely not have dissipated. Further, the Court cannot agree that nothing connects the text message to the voice message. The two messages appear to be the last communications that McFarland sent to Keith, and the messages were sent at most within 48 hours of each other. Considering that the voice message said that it was time for Keith to pay and that McFarland would figure a way to make Keith pay for McFarland's arm, it is not unreasonable to view the text message as McFarland communicating that he had found a way for Keith to pay, and that way involved the use of the hunting knife and/or the shotgun shells/shotgun. In the absence of other communications between the brothers, it is reasonable to view the messages as connected.[14]

---

[13] Defendants object that the Clovis PD investigative report (Drooyan Opp. Dec. Ex. 22) is hearsay. However, any statements that were purportedly made by Rios are admissions of a party opponent, see Fed. R. Evid. 801(d)(2)(A), and it is possible that the report may be admissible as a public record, see Fed. R. Evid. 803(8)(A)(iii).

[14] The Court notes that McFarland testified that he did not recall when he left the voice message, but that it was not January 24, 2015, and he could have left it several days before. See McFarland Depo. 29:7-13. The precise date when the voice message was left is not the issue. The issue is what information was known to Rios about when the voice message was left. See John, 515 F.3d at 940 (probable cause is determined by examining the facts and information known to the officer). Based on the evidence submitted, there are two possible dates. January 24 is one possible date because Rios indicated (through his deposition, his arrest warrant declaration, and his police report) that this is when the message was received. See Rios Depo. 22:15-23; Drooyan Dec. Exs. 4, 5. January 23 is the other possible date, and that date comes from the Clovis PD investigative report. See Drooyan Opp. Dec. Ex. 22. As discussed above, accepting either January 23 or January 24 as the date when the voice message was left does not change the probable cause determination.

McFarland also argues that the text message is not specific in terms of a crime threatened and Rios himself did not identify what specific crime was being threatened in the text message. However, California courts have held that § 422's phrase that "crime which will result in great bodily injury" means "the crime, if committed, would result in great bodily injury." People v. Maciel, 113 Cal.App.4th 679, 685 (2003); see Butler, 85 Cal.App.4th at 759. Notably, "there is no requirement that a specific crime or Penal Code violation be threatened." Maciel, 113 Cal.App.4th at 685; Butler, 85 Cal.App.4th at 755. Therefore, that Rios did not identify a particular Penal Code provision is not fatal.[15] See id.; cf. also Edgerly, 599 F.3d at 953 (noting that officers generally do not need probable cause as to every element of a crime).

McFarland also relies on the decision by the Fresno County District Attorney's Office not to bring charges due to insufficient evidence. There are two problems with McFarland's position. First, McFarland cites no authority that this Court is bound by the District Attorney's determination of probable cause. Second, the decision of the District Attorney's Office does not analyze probable cause to arrest. Deputy District Attorney Caples explained that he reviewed the written materials submitted (which the Court will assume means Rios's police report and warrantless arrest declaration) and measured the information in those materials against the "beyond a reasonable doubt" standard, which is the standard that would be needed for a conviction at trial. See Caples Depo. 20:11-18, 23:12-19. In fact, Caples stated that the decision to not bring charges had "nothing to do with probable cause." Id. at 24:19-22. It is well established that the "beyond a reasonable doubt" standard is a higher and more stringent standard than "probable cause." See Newman v. Twp. of Hamburg, 773 F.3d 769, 773 (6th Cir. 2014); United States v. Brooks, 610 F.3d 1186, 1193 (9th Cir. 2010); United States v. Banuelos-Romero, 597 F.3d 763, 768 (5th Cir. 2010); United States v. Driscoll, 632 F.2d 737, 739 (9th Cir. 1980). Therefore, that Caples and the District Attorney's Office did not find the evidence strong enough to meet the stringent "beyond a reasonable doubt" standard does not speak to the issue of "probable cause" to arrest.

---

[15] Given the nature of the text and the brothers' history, a threat to commit *inter alia* aggravated assault under California Penal Code § 245(a)(1) can reasonably be inferred. See Cal. Pen. Code § 245; Drooyan Dec. Ex. 4.

Finally, McFarland criticizes Rios for not contacting friends or other family members of the brothers, and for not investigating the brothers' respective criminal backgrounds. McFarland does not elaborate and does not cite any authority in connection with these criticisms.[16] However, the Ninth Circuit has held that "officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness's knowledge or interview other witnesses." Peng v. Hu, 335 F.3d 970, 978 (9th Cir. 2003); Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001). To the extent that McFarland is relying on this line of authority, his argument is not persuasive. "A sufficient basis of knowledge can be established if the victim provides 'facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator.'" Peng, 335 F.3d at 978 (quoting Fuller v. M.G. Jewelry, 950 F.2d 1437, 1444 (9th Cir. 1991)). Here, Keith appeared fearful to Rios, told Rios that he was in fear of McFarland, told Rios that McFarland was his brother, and provided Rios with a relatively detailed account of a volatile history with McFarland, a voice message from McFarland, and the shotgun shells and hunting knife text message from McFarland. Based on the evidence submitted to the Court, this information was sufficiently detailed to cause a reasonable person to believe that McFarland had violated § 422. See Peng, 335 F.3d at 978; Fuller, 991 F.2d at 1444. In the absence of further elaboration by McFarland, the failure of Rios to check criminal backgrounds or interview friends or family of the brothers does not defeat probable cause.

In sum, given the totality of the circumstances known to Rios, including the content of the text message, the content of the voice message, and the volatile history of the brothers, a reasonable and prudent person would have concluded that there was a fair probability that McFarland intended that the text be taken as a threat and that he violated § 422. See Coquico, 789 F.3d at 1053 n.3; John, 515 F.3d at 940; George T., 33 Cal.4th at 630. Because probable cause existed, summary judgment on the first cause of action in favor of Defendants is appropriate. Yousefian, 779 F.3d at 1014.

---

[16] The undeveloped nature of McFarland's argument is reason alone to find that it cannot defeat summary judgment. See Jordan v. Binns, 712 F.3d 1123, 1134 (7th Cir. 2013) (holding that undeveloped arguments are waived).

1    b.    Qualified Immunity

2        Because Rios had probable cause to arrest McFarland for violation of § 422, there was no

3    constitutional violation for a false arrest.  If there is no constitutional violation, there is no need to

4    reach the immunity inquiry.  <u>Johnson v. County of L.A.</u>, 340 F.3d 787, 793-94 (9th Cir. 2003).

5    However, in the alternative, the Court finds that qualified immunity is appropriate.  Considering

6    the content of the messages and the volatile history of the brothers, a reasonable officer in Rios's

7    position "could have reasonably but mistakenly believed" that the arrest of McFarland for

8    violation of § 422 did not violate a clearly established constitutional right.  <u>Ellins v. City of Sierra</u>

9    <u>Madre</u>, 710 F.3d 1049, 1066 (9th Cir. 2013)

10    c.    *Monell* Liability

11        There is no basis for *Monell* liability.  Because Rios did not arrest McFarland without

12    probable cause in violation of the Fourth Amendment, the City cannot be liable under § 1983 for

13    an arrest without probable cause.  <u>See</u> <u>City of</u> <u>Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986);

14    <u>Yousefian</u>, 779 F.3d at 1016; <u>Jackson v. City of Bremerton</u>, 268 F.3d 646, 653 (9th Cir. 2001).

15

16    **II.    Second Cause of Action – False Arrest & False Imprisonment**

17        *Defendants' Arguments*

18        Defendants argue that that it is unclear how the second cause of action differs from the

19    first.  Because there was probable cause to arrest McFarland under § 422, this cause of action fails.

20    Also, although the second cause of action alleges that McFarland spent an unconstitutional period

21    of time in the Fresno County Jail and was denied an opportunity to post bail by Fresno County,

22    there is no evidence that the Defendants had any control over the Fresno County Jail or setting

23    bail.  McFarland produced no evidence that he was denied the opportunity to post bail and cannot

24    show any policy, custom, or practice of the City caused McFarland harm.

25        *Plaintiff's Arguments*

26        McFarland does not expressly address his second cause of action or Defendants'

27    arguments against the second cause of action.  However, McFarland argues that he is entitled to

28    summary judgment on the second cause of action since there was no probable cause to arrest him.

1        *Discussion*

2        It is not entirely clear what claim is alleged under the second cause of action.  The second

3   cause of action includes allegations that McFarland was in jail for about 56 hours (3 or 4 hours of

4   which were in the Clovis Jail, with the remainder in the Fresno County Jail) before he was

5   released, he did not have a probable cause hearing, and his arrest was unreasonable because he did

6   not violate § 422.  See Doc. No. 31 at ¶¶ 35-39.  However, in McFarland's motion for summary

7   judgment, he contends that he is entitled to summary judgment under the second cause of action

8   because his arrest was without probable cause, and that "due to Defendants' unlawful arrest of

9   Plaintiff McFarland, Plaintiff was confined against his will from January 25, 2015 at 3:20 p.m.

10  until January 27, 2015 at 8:52 p.m. . . . ." Doc. No. 37 at 15:21-16:3.  This suggests that the arrest

11  without probable cause led to or resulted in imprisonment from January 25 to January 27.  Further,

12  as indicated above, McFarland's opposition does not expressly discuss the second cause of action,

13  but does argue that there was not probable cause to arrest him for violating § 422.  See Doc. No.

14  50 at pp. 20-25.  Based on McFarland's motion and opposition, the Court will view the second

15  cause of action as dependent upon an absence of probable cause to arrest.[17]

16       So viewing the second cause of action, summary judgment is appropriate.  Rios had

17  probable cause to arrest McFarland under § 422 based on the text message, the voice message, and

18  the brothers' volatile history.  Because probable cause existed, summary judgment in favor of Rios

19  and Collins is appropriate.

20       With respect to the City, summary judgment is appropriate because McFarland's arrest was

21  constitutional. See Heller, 475 U.S. at 799; Yousefian, 779 F.3d at 1016; Jackson, 268 F.3d at 653.

22  _____

23  [17] It is possible to view the second cause of action as alleging multiple claims.  However, as explained above,
    McFarland's motion and opposition did not clarify the second cause of action or contradict Defendants' interpretation
    of it, did not expressly address Defendants' arguments against the second cause of action, and at best simply argued

24  that probable cause did not exist.  Without more from McFarland, the Court will not consider other claims that may be
    contained within the second cause of action.  See Estate of Shapiro v. United States, 634 F.3d 1055, 1060 (9th Cir.

25  2011) (holding that the plaintiff had abandoned its claim by not raising it in opposition to a motion for complete
    summary judgment); Bombard v. Ft. Wayne Newspapers, Inc., 92 F.3d 560, 562 n.2 (7th Cir. 1996) ("Bombard's

26  complaint also alleged that [Defendant] violated the [FMLA] . . . .  Bombard abandoned his FMLA claim after failing
    to respond to the FMLA arguments in [defendant's] motion for summary judgment."); Resolution Trust Corp. v.

27  Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) (". . . grounds alleged in the complaint but not relied upon in
    summary judgment are deemed abandoned."); cf. Ramirez v. JPMorgan Chase Bnak, N.A., 2013 U.S. Dist. LEXIS

28  80624, *9 (E.D. Cal. June 6, 2013) (in context of a 12(b)(6) motion, holding that the failure of a plaintiff to respond to
    a defendant's reasonable interpretation of a claim is a concession to that interpretation).

### III.  Third Cause of Action – Excessive Force[18]

*Defendant's Argument*

Defendants argue that there was no excessive force under the *Graham* factors.  McFarland is 6'1" and about 270 lbs.  McFarland was arrested for violation of § 422, which is a felony, and it was known that McFarland was in possession of a shotgun and a hunting knife.  McFarland had a video camera pointed at the officers and after he looked through the window at the officers, he did not open the door until 30 seconds later.  McFarland refused to allow the officers inside.  Once McFarland stepped outside, and once he stepped out of the threshold, the officers used minimal force.  The officers grabbed McFarland's arms, turned his arms behind his back, and placed McFarland in handcuffs.  In response to McFarland's complaints about the handcuffs hurting, Rios placed a second set of handcuffs on McFarland.  Given McFarland's size, the crime at issue, and his knowledge that officers were present, McFarland posed an immediate threat to the safety of the officers.  Grabbing McFarland, twisting his arms, and handcuffing him in order to effectuate an arrest was reasonable and a minimal amount of force.  The officers were not required to use the least intrusive amount of force, and it is not reasonable to second guess the officers' conduct during the heat of the arrest.   Also, with respect to the City's liability, the applicable policies are constitutional.  McFarland has no evidence that a deliberate policy, custom, or practice is the moving force behind any injury.

*Plaintiff's Opposition*

McFarland argues that as soon as he stepped out of his house, the officers grabbed and twisted his arms behind his back, which caused severe pain.  McFarland states that he repeatedly told the officers that he was disabled and that they were hurting him.  The officers bent him over and had his arm up in the middle of his back.  McFarland states that he repeatedly requested that he be handcuffed in front, but the officers did not do so despite the pain he was experiencing.

*Legal Standard*

All claims that law enforcement officers used excessive force, either deadly or non-deadly,

---

[18] Again, there are not cross-motions with respect to the third cause of action.  Only Defendants move for summary judgment on this claim.

in the course of an arrest, investigatory stop, or other seizure of a citizen are to be analyzed under

the Fourth Amendment and its standard of objective reasonableness.  See Scott v. Harris, 550 U.S.

372, 381-83 (2007); Graham v. Connor, 490 U.S. 386, 395 (1989).  The pertinent question in

excessive force cases is whether the use of force was "objectively reasonable in light of the facts

and circumstances confronting [the officers], without regard to their underlying intent or

motivation."  Graham, 490 U.S. at 397; Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th

Cir. 2007).  The objective inquiry into reasonableness is highly fact specific.  See Scott, 550 U.S.

at 383; Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir. 2010).  "We first assess the quantum of

force used to arrest [the plaintiff]" and then "measure the governmental interests at stake by

evaluating a range of factors."  Davis v. City of Las Vegas, 478 F.3d 1048, 1054 (9th Cir. 2007).

Factors that are considered in assessing the government interests at stake include, but are not

limited to, "the severity of the crime at issue, whether the suspect poses an immediate threat to the

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

arrest by flight."  Graham, 490 U.S. at 396; Luchtel v. Hagemann, 623 F.3d 975, 980 (9th Cir.

2010); Davis, 478 F.3d at 1054.  Further, where it is or should be apparent that an individual is

emotionally or mentally unstable, that is a factor that must be considered in determining the

reasonableness of the force employed.  See Luchtel, 623 F.3d at 980; Drummund v. City of

Anaheim, 343 F.3d 1052, 1058 (9th Cir. 2003).  "In some cases . . ., the availability of alternative

methods of capturing or subduing a suspect may be a factor to consider."  Smith v. City of Hemet,

394 F.3d 689, 701 (9th Cir. 2005); see Luchtel, 623 F.3d at 980.  However, police officers "are not

required to use the least intrusive degree of force possible" as long as the force actually used was

reasonable.  Forrester v. City of San Diego, 25 F.3d 804, 807 (9th Cir. 1994); see Gregory v.

County of Maui, 523 F.3d 1103, 1107 (9th Cir. 2008).  That is, a reasonable use of force

"encompasses a range of conduct, and the availability of a less-intrusive alternative will not render

conduct unreasonable."  Wilkinson, 610 F.3d at 551.  Reasonableness "must be judged from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

Graham, 490 U.S. at 396; Wilkinson, 610 F.3d at 550.  "The calculus of reasonableness must

embody allowance for the fact that police officers are often forced to make split-second judgments

-- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97; Wilkinson, 610 F.3d at 550. "Force is excessive when it is greater than is reasonable under the circumstances." Santos v. Gates, 287 F.3d 846, 854 (9th Cir. 2002).

*Discussion*

As indicated above, there are a number of factors that are assessed in considering excessive force. The Court will consider each factor separately.

1.    Quantum of Force

The first type of force is the physical force used in connection with handcuffing. Some amount of force or touching is necessary in order to handcuff an arrested individual. See McFarland v. City of Clovis, 163 F.Supp.3d 798, 807 (E.D. Cal. 2016). Defendants appear to indicate that the physical force that was used was nothing more than what typically occurs when a person is handcuffed. However, McFarland testified at his deposition that the officers grabbed him by the thumb and hand, Collins pinched nerves in McFarland's arm and squeezed McFarland's arm hard, the officers twisted his arm and hands up into the middle of his back, and that the officers bent him over. See McFarland Depo. 37:18-22, 41:23-42:3, 44:18-22. Viewing this evidence in the light most favorable to McFarland, this testimony suggests that something more than a typical handcuffing occurred. Being grabbed by the thumb, having a nerve pinched, twisting arms *up* into the middle of the back (as opposed to merely twisting or placing arms *behind* the back), and then bending McFarland over, collectively suggest that pain compliance holds/techniques may have been used on McFarland. Pain compliance techniques are a higher quantum of force than the force/touching that of necessity occurs in a "typical" or "non-resisting" handcuffing procedure. Nevertheless, pain compliance holds are generally considered "less significant than most claims of force." See Forrester , 22 F.3d at 807.

The second type of force at issue is the use of handcuffs. Handcuffs are used to promote officer safety and prevent escape. See Meredith v. Erath, 342 F.3d 1057, 1062 (9th Cir. 2003). The use of handcuffs during an arrest is quite common and often a "standard practice." Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002). Ordinarily, the use of handcuffs during an arrest is a

very low quantum of force that will not constitute excessive force.  See Brown, 278 F.3d at 369; Palacios v. City of Oakland, 970 F.Supp. 732, 741 (N.D. Cal. 1997); cf. Muehler v. Mena, 544 U.S. 93, 99 (2005) (noting that a person who was handcuffed during the execution of a search warranted suffered a "marginal intrusion.").  However, the quantum of force increases, and can constitute excessive force, when the handcuffs are too tight.  See, e.g., Wall v. County of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004); Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993).  In this case, there is nothing to indicate that the handcuffs were too tight.  Therefore, the handcuffs appear to be a low quantum of force.

However, there is an additional consideration that impacts the low quanta of force used in this case.  Depending on the circumstances, a seemingly low quantum of force can be excessive if the officer knows about a plaintiff's disability or pre-existing medical condition and uses force that affects the disability or pre-existing condition.  See Beckles v. City of N.Y., 492 F. App'x. 181, 182-83 (2d Cir. 2012); Fisher v. City of Las Cruces, 584 F.3d 888, 901-02 (10th Cir. 2009); Stainback v. Dixon, 569 F.3d 767, 772-73 & n.5 (7th Cir. 2009); Littrell v. Franklin, 388 F.3d 578, 585-86 (8th Cir. 2004); Walton v. City of Southfield, 995 F.2d 1331, 1342 (6th Cir.1993); see also Alexander v. County of L.A., 64 F.3d 1315, 1322-23 (9th Cir. 1995) (noting *inter alia* that the plaintiff, who alleged an excessive force handcuffing claim, informed officers that he was a dialysis patient several times and that officers noticed that the plaintiff's wrists felt soft); Arias v. Amador, 61 F.Supp.3d 960, 977 (E.D. Cal. 2014) (noting that one courts have granted summary judgment in handcuffing cases in which *inter alia* no complaints of pain or pre-existing injuries were made); Peters v. City of Huron, 2009 U.S. Dist. LEXIS 108390, *42 (E.D. Cal. Nov. 19, 2009) (noting *inter alia* that the plaintiff, who alleged an excessive force handcuffing claim, did not have or inform the officers of a pre-existing injury or medical condition); Shaw v. City of Redondo Beach, 2005 U.S. Dist. LEXIS 46361, *30-*31 (C.D. Cal. Aug. 18, 2005) (same).  Here, accepting McFarland's evidence as true, see Narayan, 616 F.3d at 899, there is clear evidence that Collins and Rios knew that McFarland had a disabled arm.  McFarland's testimony shows that the officers expressly stated that they knew that Keith had injured McFarland's arm.  See McFarland Depo. at 41:19-20, 47:18-24; see also Drooyan Dec. Ex. 5.  Further, McFarland repeatedly told the

officers that he was disabled, told them that they were hurting his arm, and asked to be handcuffed in front. See id. at 41:23-42:20, 43:16-20, 44:10-22. Because the officers knew that McFarland was injured when they applied physical force and handcuffs, and kept the handcuffs on McFarland in the back, the quanta of force used are elevated.

### 2. Government Interest

#### a. Severity of the Crime

The crime at issue is Penal Code § 422. Section 422 is considered a "wobbler" offense, meaning that it is punishable either as a misdemeanor or a felony. Arellano-Hernandez v. Lynch, 831 F.3d 1127, 1132 (9th Cir. 2016); In re B.C., 2015 Cal.App. Unpub. LEXIS 803 at *15. As a "wobbler," § 422 is presumptively a felony. Arellano-Hernandez, 831 F.3d at 1132. Given the nature of the threats encompassed by § 422, and its presumptive punishment as a felony, § 422 is a serious offense. See Pryor v. City of Clearlake, 877 F. Supp. 2d 929, 946 (N.D. Cal. 2012); Adams v. Kraft, 828 F. Supp. 2d 1090, 1108 (N.D. Cal. 2011).

#### b. Threat Posed

Whether a suspect poses an immediate threat to the safety of the officers or others, i.e. the immediacy of the threat posed by a suspect, is the most important factor in evaluating excessive force. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014); Smith, 394 F.3d at 702.

In this case, McFarland is 6'1" and 270 lbs. Keith's information and the text message indicated that McFarland had a hunting knife and a shotgun with ammunition. A camera was pointing towards the front door, and McFarland looked out the window and saw the officers. McFarland said that he would get the key to unlock the door, and it took about 30 seconds before McFarland opened the door. Once the door was opened, however, McFarland was unarmed. McFarland was barraged with questions and declined to give permission for the officers to enter his home. When the officers asked McFarland to step outside, he complied. At that point, the officer applied physical force and the handcuffs. After the handcuffs were in place, McFarland requested several times to be cuffed in front, but the officers did not do so.

Viewing this evidence in the light most favorable to McFarland, see Narayan, 616 F.3d at 899, there was no immediate threat. McFarland simply opened his door, listened to the officers,

answered at least one question, and then began to step outside as requested by the officers. No evidence has been presented that McFarland charged or attacked the officers, made furtive movements, acted belligerent or hostile, made threats against the officers, or brandished a weapon. Further, after the handcuffs were applied, no evidence has been cited that indicates that McFarland tried to attack the officers or became hostile or non-compliant. The cited evidence indicates that McFarland expressed that he was in pain and requested to have the handcuffs placed in front of him. Therefore, at that time force was used, McFarland was not an immediate threat.

### c. Active Resistance or Evasion By Flight

McFarland was not fleeing from the officers, and there is no evidence that McFarland was resisting arrest. In fact, the evidence indicates that McFarland was compliant with the officers when they asked him to step outside.[19]

### d. Emotional or Mental Instability

No evidence has been cited that the officers had reason to believe that McFarland was emotionally or mentally unstable.

### e. Warning

The officers did not give a warning that they were going to use physical force on McFarland, and the parties do not address whether a warning was feasible. However, viewing the evidence in the light most favorable to McFarland, because the evidence indicates McFarland was compliant and did not pose an immediate threat, it appears that a warning could have been given.

### f. Alternative Methods of Force

The parties do not discuss any alternative methods of force to the physical force used to handcuff McFarland. Because the evidence when viewed in the light most favorable to McFarland suggests a pain compliance hold may have been used, it is possible that verbal commands might have been used.

---

[19] It is true that McFarland did not give the officers permission to enter his home. However, it was within McFarland's Fourth Amendment rights to refuse to give the officers permission to enter. United States v. Prescott, 581 F.2d 1343, 1351 (9th Cir. 1978); see also White v. Pierce, 797 F.2d 812, 817 (9th Cir. 1986) (explaining that asserting the right to refuse a warrantless entry cannot be a crime, evidence of a crime, or the circumstances used to justify a warrantless entry). The Court will not consider McFarland's exercise of his constitutional right to exclude from entry to be "resistance." Cf. White, 797 F.2d at 817; Prescott, 581 F.2d at 1351.

With respect to the handcuffs, the issue is not the handcuffs per se, it is how the handcuffs were used. Specifically, McFarland requested that he be handcuffed with his hands in front because of his disability and the pain that he was experiencing. Clovis PD permits its officer to handcuff an individual with his hands in front. <u>See</u> Jackson Depo. 11:15-18. Defendants have not cited evidence to explain why McFarland was handcuffed with his arms behind his back, nor have they explained why having his hands cuffed in the front was not a feasible alternative. Without more from Defendants, handcuffing McFarland with his hands in front was a feasible alternative.

Defendants argue that they did not ignore McFarland's complaints of pain because a second set of handcuffs were placed on him. However, that solution does not address the problem. According to McFarland, the problem is being handcuffed with his hands behind his back, which is why he repeatedly requested to be handcuffed with his hands in front. Viewing the evidence in the light most favorable to McFarland, and given McFarland's description of his injury and his continued requests to be handcuffed with his hands in front, utilization of the second pair of handcuffs behind McFarland's back does not appear to be a reasonable alternative.

3.    <u>Conclusion</u>

Accepting McFarland's evidence as true and viewing the evidence in the light most favorable to him, there is a genuine disputed issue of material fact. Importantly, the officers knew beforehand that McFarland had an injured arm and McFarland was compliant. The officers told McFarland that they knew he had an injured the arm, and McFarland repeatedly confirmed his injury/disability and that he was in pain from being handcuffed with his arms behind his back. McFarland was not an immediate threat, he was not warned before physical force was used, and it appears that he could have been handcuffed with his arms in front of him. Under these circumstances, a reasonable jury could conclude that the officers used excessive force. <u>See</u> <u>Beckles</u>, 492 F. App'x. at 182-83; <u>Fisher</u>, 584 F.3d at 901-02; <u>Stainback</u>, 569 F.3d at 772-73 & n.5; <u>Littrell</u>, 388 F.3d at 585-86; <u>Alexander</u>, 64 F.3d at 1322-23; <u>Walton</u>, 995 F.2d 1331, 1342 (6th Cir.1993); <u>Salyers v. Alexandria Police Dep't</u>, 2016 U.S. Dist. LEXIS 65301, *11-*12 (S.D. Ind. May 18, 2016) (and cases cited therein). Summary judgment on the third cause of action will be denied.

1    ### 4. _Monell_ Liability

2    Under § 1983, liability against a municipality only attaches where the municipality itself

3    causes a constitutional violation through execution of a "policy or custom, whether made by its

4    lawmakers or by those whose edicts or acts may fairly be said to represent official policy."

5    Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978); Price v. Sery, 513 F.3d 962, 966

6    (9th Cir. 2008). Section 1983 municipal liability may be premised on: (1) conduct pursuant to a

7    formal or expressly adopted official policy; (2) a longstanding practice or custom which

8    constitutes the "standard operating procedure" of the local government entity; (3) a decision of a

9    decision-making official who was, as a matter of state law, a final policymaking authority whose

10   edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an

11   official with final policymaking authority either delegating that authority to, or ratifying the

12   decision of, a subordinate. See Thomas v. County of Riverside, 763 F.3d 1167, 1170 (9th Cir.

13   2014); Price, 513 F.3d at 966. "[Municipal] policy 'causes' an injury where it is 'the moving

14   force' behind the constitutional violation, or where 'the [municipality] itself is the wrongdoer."

15   Lowry v. City of San Diego, 818 F.3d 840, 854 (9th Cir. 2016) (quoting Chew v. Gates, 27 F.3d

16   1432, 1444 (9th Cir. 1994)).

17   Here, the City contends that it has submitted the relevant policies that have application to

18   this claim, and those policies are constitutional. McFarland does not address this argument, nor

19   does he identify a policy, practice, or custom that caused the officers to use excessive force. The

20   City has done enough to meet its burden. See Soremekun, 509 F.3d at 984. Because McFarland

21   does not identify a policy, practice, or custom that caused a constitutional violation, summary

22   judgment in favor of the City is appropriate. See Thomas, 763 F.3d at 1170; Price, 513 F.3d at

23   966; Soremekun, 509 F.3d at 984; Nissan Fire, 210 F.3d at 1103.

24   ### 5. Qualified Immunity

25   Viewing the evidence in the light most favorable to McFarland, the Court cannot say that

26   qualified immunity is appropriate. McFarland was compliant, not an immediate threat, and was

27   known to have an injured arm. Despite this, the officers applied physical force (beyond what is

28   inherent in a "typical" handcuffing) and kept McFarland handcuffed behind his back, all of which

27

caused pain to his injured arm. The Court is not aware of a Ninth Circuit case that expressly holds that handcuffing or other uses of force that aggravate a pre-existing injury on a compliant and non-threatening arrestee violates the Fourth Amendment. However, in finding a triable claim concerning excessive force and handcuffing, the Ninth Circuit noted a dialysis plaintiff's physical condition and statements to the officers as part of the totality of the circumstances. See Alexander, 64 F.3d at 1322-23. Also, prior to this incident, lower courts within the Ninth Circuit have commented in handcuffing cases that there were no allegations that an arrestee had a pre-existing condition that was aggravated by the handcuffing. See Arias, 61 F.Supp.3d at 677; Peters, 2009 U.S. Dist. LEXIS 108390 at *42; Shaw, 2005 U.S. Dist. LEXIS 46361 at *30-*31. Importantly, prior to this incident, other circuit courts of appeals have recognized that the Fourth Amendment may be violated when handcuffs are used in such a way that a compliant, non-threatening arrestee's known physical condition is aggravated. See Beckles, 492 F. App'x. at 182-83; Fisher, 584 F.3d at 901-02); Stainback, 569 F.3d at 772-73 & n.5; Littrell, 388 F.3d at 585-86; Walton, 995 F.2d at 1342; see also Salyers, 2016 U.S. Dist. LEXIS 65301 at *11-*12 (discussing the "body of law [that] has developed holding that if an officer knows of a preexisting injury or medical condition that will be aggravated by handcuffing an arrestee behind his back, the officer is 'obligated to consider the information, together with the other relevant circumstances, in determining whether it is appropriate to handcuff the arrestee in such a fashion.'"). In light of this substantial case law and the facts in this case, qualified immunity will be denied.

**IV.**    **Fourth Cause of Action – California Civil Code § 52.1**

*Defendants' Arguments*

Defendants argue that the force used against McFarland was reasonable and was nothing more than the force inherent in the detention, handcuffing, and transportation of an arrestee.

*Plaintiff's Arguments*

McFarland does not directly address this cause of action in his opposition. However, McFarland does move for summary judgment on the basis that there was no probable cause to arrest him for violation of § 422.

*Discussion*

With respect to McFarland's motion, as discussed above, Rios had probable cause to arrest McFarland. Therefore, summary judgment in favor of McFarland will be denied.

As to the City's motion, "the elements of the excessive force claim under § 52.1 are the same as under § 1983." Cameron v. Craig, 713 F.3d 1012, 1022 (9th Cir. 2013). That is, "a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1." Chaudhry v. City of L.A., 751 F.3d 1096, 1105 (9th Cir. 2014). Because there is a genuine disputed issue of material fact as to whether excessive force was used by the officers, summary judgment on this claim in favor of the Defendants will be denied. See id.

**V.      Fifth Cause of Action – Intentional Infliction of Emotional Distress ("IIED")**

*Defendants' Argument*

Defendants argue that the arrest and force used were lawful, and thus, the elements of IIED cannot be met. Alternatively, the actions of the officers in arresting McFarland and using force were not sufficiently extreme and outrageous for purposes of IIED. Finally, there is no evidence that McFarland suffered from severe emotional distress as a result of the officers' conduct.

*Plaintiff's Opposition*

McFarland does not expressly address Defendants' arguments or the fifth cause of action. However, McFarland does argue that the officers used excessive force and that there was no probable cause to support the arrest.

*Legal Standard*

The elements of an IIED claim are: (1) extreme and outrageous conduct by the defendant; (2) the defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009); Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993). "'Severe emotional distress' means emotional distress of such substantial quality or enduring quality that no reasonable person in a civilized society should be expected to endure it."

Hughes, 46 Cal.4th at 1051; Potter, 6 Cal.4th at 1004.  Conduct is "extreme and outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Hughes, 46 Cal.4th at 1050; Potter, 6 Cal.4th at 1001.

   *Discussion*

   Defendants make essentially three arguments in favor of summary judgment.

   First, Defendants contend that the arrest itself was lawful in that it was supported by probable cause.  As discussed above, the Court agrees.  An arrest that is supported by probable cause is not a "false arrest" and it is not extreme and outrageous.  Therefore, summary judgement on McFarland's IIED claim that is based on an arrest without probable cause is appropriate.

   Second, Defendants argue that they did not use excessive force and, even if they did, it was not sufficiently outrageous.  As discussed above, there is a genuine disputed issue of material fact as to whether the officers used excessive force.  Therefore, the basis for Defendants' argument is infirm and does not support summary judgment.  Further, courts have recognized that it is possible for excessive force to be sufficiently outrageous for purposes of an IIED claim.  Blankenhorn, 485 F.3d at 487 n.17; Bordegaray v. Cnty. of Santa Barbara, 2016 U.S. Dist. LEXIS 172269, *41-42 (C.D. Cal. Dec. 12, 2016); Dillman v. Tuolumne Cnty., 2013 U.S. Dist. LEXIS 65206, *61-62 (E.D. Cal. May 7, 2013); Burns v. City of Redwood City, 737 F.Supp.2d 1047, 1067 (N.D. Cal. 2010).  Here, given the facts of the facts of this case, and particularly the officers' knowledge of McFarland's pre-existing injury, a reasonable jury could find that the officers' conduct was sufficiently outrageous.  See Blankenhorn, 485 F.3d at 487 n.17.  Therefore, summary judgment on the issue of outrageous conduct is not appropriate.

   Finally, Defendants argue that there is no evidence that McFarland suffered severe emotional distress.  Actually suffering severe emotional distress is an element of IIED.  See Hughes, 46 Cal.4th at 1050-51; Judicial Council of Cal., Civil Jury Instructions, §§ 1600, 1604 (Fall 2016).  McFarland does not address this argument, nor has he sufficiently pointed to evidence that reflects severe emotional distress.  Without citation to evidence, or even a response to this argument, the Court can only conclude that there is no evidence of severe emotional distress.  Because there is no evidence of a necessary element, summary judgment in favor of

Defendants on McFarland's IIED claim is appropriate. See Soremekun, 509 F.3d at 984; Nissan Fire, 210 F.3d at 1103; Hughes, 46 Cal.4th at 1050-51.

**VI.** **Sixth Cause of Action – False Imprisonment**

*Defendants' Arguments*

Defendants argue that the key inquiry is whether McFarland was arrested pursuant to lawful privilege. The arrest was pursuant to a lawful privilege because it was supported by probable cause. Further, the Defendants argue that they had nothing to do with McFarland's detention time or the setting of bail. Since there was a lawful privilege to confine, summary judgment should be granted.

*Plaintiff's Arguments*

McFarland argues that he is entitled to summary judgment on this cause of action because his arrest was not supported by probable cause. McFarland's opposition does not expressly address the sixth cause of action, nor does it expressly address Defendants' arguments against the sixth cause of action.

*Legal Standard*

The tort of false imprisonment is defined as the unlawful violation of the liberty of another. Asgari v. City of Los Angeles, 15 Cal.4th 744, 757 (1997); Fermino v. Fedco, Inc., 7 Cal.4th 701, 715 (1997). Liability for false imprisonment attaches only if confinement is without lawful privilege. Asgari, 15 Cal.4th at p. 757; see Young v. County of L.A., 655 F.3d 1156, 1169 (9th Cir. 2011). If an officer has probable cause to make an arrest, a state law claim for false imprisonment fails. See Young, 655 F.3d at 1169-70; see also O'Toole v. Superior Ct., 140 Cal.App.4th 488, 510-12 (2006).

*Discussion*

Based on the briefing, the parties are in agreement that probable cause is the key issue that entitles each of them to summary judgment. As discussed above, Rios had probable cause to arrest McFarland for violation of § 422. That is, the arrest was with lawful privilege. Because Rios had probable cause to arrest McFarland, Defendants' motion for summary judgment on this

cause of action will be granted, and McFarland's motion will be granted.[20]  Young, 655 F.3d at
1169-70.

## VII.  Seventh Cause of Action – Negligence

### *Defendants' Arguments*

Defendants argue that the TAC is vague as to what duty of care was breached by the
officers, but that the claim appears to be based on a duty to not arrest a person without probable
cause and to not use excessive force.  However, the arrest was supported by probable cause and
excessive force was not used.  Therefore, there is no breach of an identifiable duty.

### *Plaintiff's Arguments*

McFarland argues that he is entitled to summary judgment on this cause of action because
his arrest was not supported by probable cause.  McFarland's opposition does not expressly
address the seventh cause of action or Defendants' arguments against the seventh cause of action,
although McFarland does argue that excessive force was used.

### *Legal Standard*

"In order to prove facts sufficient to support a finding of negligence, a plaintiff must show
that the defendant had a duty to use due care, that he breached that duty, and that the breach was
the proximate or legal cause of the resulting injury."  Hayes v. County of San Diego, 57 Cal.4th
622, 629 (2013).  A peace officer's use of excessive force may form the basis for a state law
negligence claim.  See Young, 655 F.3d at 1170; Save CCSF Coalition v. Lim, 2015 U.S. Dist.
LEXIS 69195, *56-*57 (N.D. Cal. May 27, 2015); Jaramillo v. City of San Mateo, 76 F.Supp.3d
905, 926-27 (N.D. Cal. 2014).

### *Discussion*

The Court agrees with Defendants that the negligence cause of action appears to include
two claims, one based on an arrest without probable cause and one based on excessive force.

---

[20] There are additional allegations in the sixth cause of action that relate to McFarland's detention in the Clovis PD jail
and the Fresno County jail.  Like the second cause of action, McFarland's opposition does not expressly address the
sixth cause of action or challenge Defendants' arguments (except for probable cause).  Without more from McFarland,
the Court will not consider other claims that may not depend on probable cause to be contained within the sixth cause
of action.  See Estate of Shapiro, 634 F.3d at 1060; Bombard, 92 F.3d at 562 n.2; Resolution Trust, 43 F.3d at 599.

With respect to the negligence claim based on a lack of probable cause, as discussed above, Rios had probable cause to arrest McFarland for violation of § 422. Therefore, McFarland's motion for summary judgment on this claim will be denied, but Defendants' motion will be granted.

With respect to the negligence claim based on excessive force, as discussed above, a reasonable jury could find that the officers used excessive force. Therefore, Defendants' motion for summary judgment on this claim will be denied. <u>See</u> <u>Young</u>, 655 F.3d at 1170; <u>Save CCSF</u>, 2015 U.S. Dist. LEXIS 69195 at *56-*57; <u>Jaramillo</u>, 76 F.Supp.3d at 926-27.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (Doc. No. 37) is DENIED;

2.  Defendants' motion for summary judgment (Doc. No. 48) is GRANTED as to the following matters:

     a.  Plaintiff's first, second, fifth, and sixth causes of action; and

     b.  Plaintiff's seventh cause of action, but only as to the claim based on an arrest without probable cause; and

3.  Defendants' motion for summary judgment is otherwise DENIED.

IT IS SO ORDERED.

Dated:   April 10, 2017                    _____

                                           SENIOR DISTRICT JUDGE